

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68103-2578
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 5, 2024

Urness Gray
125 RUE VIANSA DRIVE
LAFAYETTE, LA 70501

RE:    Long Term Disability (LTD) Benefits
       Acadia Healthcare Company, Inc
       Claim #: 15209213

Dear Urness:

We reviewed your appeal request for Long Term Disability ("LTD") benefits and maintained the decision to deny benefits.

## Initial Claim Decision

You submitted a claim for your absence from work as of August 19, 2023, as a result of generalized anxiety disorder.    Your LTD benefits were due to begin on November 18, 2023, after the Policy's elimination period was completed.  However, your claim was denied as the evaluation concluded you were not disabled throughout and beyond the Policy's elimination period.

The basis for the decision was outlined in a letter dated March 1, 2024.  You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt that your claim should not have been denied and submit additional information to support your claim. Specifically, you were advised to submit the following information: *Office notes, test results, procedure notes, hospital records and therapy records from 11/11/23 through the date of your appeal from Ms. Fontenot and any other treating providers. You should also provide any additional information that you feel will support your claim.*

## Appeal

In a letter dated August 29, 2024, you requested an appeal.  In this letter stated you went through traumas as a child, teenager and as a young adult and this lead to your nursing specialty of mental health and substance abuse to help yourself and your loved ones.   You outlined the experiences you have been through the last few years, including family traumas and leading up to work situations that caused you to be out of control for several months.  You noted difficulties with your HR Director, and you are looking for payment for a psychological disability from August 18, 2023 through April 29, 2024. You stated this date as you state you started night school to see how you disposition was with new people.

EXHIBIT

____C____

1  of 7

The following medical information was submitted with your appeal request:

- February 26, 2024, office visit notes from LJFC Behavioral Health; progress notes by Kathleen Boudreaux
- May 7, 2024, office visit notes from LFFC Behavioral Health; progress notes by Kathleen Boudreaux
- February 26, 2024, and December 5, 2023 office visits in OH Lafayette-General Community Healthcare Center
- August 14, 2024, Psychiatric Supplemental Information form completed by Kathleen Boudreaux
- To Whom it May Concern letter from Brandy Vaughns
- Job Summary and employment documents
- August 22, 2023, November 14, 2023, February 14, 2024, and May 8, 2024 medical records from Bryant Dronette, PMHNP-BC

**Appeal Evaluation**

In February 2024 during the initial claims investigation your file was reviewed by Neema Hooker, MD, a physician who is board certified in Family Medicine.    Dr. Hooker opined based on the review of the available medical records, no restations and limitations can be reasonably supported from August 19, 2023, ongoing.    Dr. Hooker reviewed from a medicine perspective and deferred comment on any psychiatric causes of impairment to a psychiatrist reviewer.

You file was also reviewed by Ryan Greene, M.D., board certified in psychiatry.  Dr. Greene opined there is no identified impairing diagnosis from August 19, 2023, ongoing and as such there is no support for restrictions or limitations.  Dr. Greene noted:

*The claimant does have the capacity to perform sustained, full-time work without restrictions. There is no objective medical evidence that the claimant is impaired from a psychiatric perspective. She is noted to have situational anxiety related to her primary workplace and managing certain types of psychiatric patients, but she is also noted to have a second job working at an adult day care and is able to work without any concerns….*

*There is no indication of psychomotor retardation or agitation. There is no mental status exam. Provider notes by Megan Fontenot FNP revealed psych examination to be within normal limits for all visits. Patient never required higher level of care. She was not suicidal or homicidal. There was no documentation of psychosis. There was no medication side effects. Patient was able to perform ADLs and care for herself….*

*Peer to peer revealed the goal for time off was to allow for flexibility to attend appointments however, there is no documentation that patient was seen daily or frequently enough to justify complete time off from work and she was not noted to see psychiatrist until December 2023. When provider was asked in peer to peer what patient did outside of her appointments to contribute to her wellness while she was not working provider noted she was not sure and did not feel claimant could not work entirely but rather just needed flexibility to attend these appointments.*

Please see the letter dated March 1, 2024, for the findings of the review completed in connection with the initial review of your claim and the decision to deny benefits.

During the review of your appeal, your file was referred for an independent review with Martin Lipschutz M.D., board certified in psychiatry.    Dr. Lipschutz noted there are no impairing psychiatric diagnosis. "*There were no clinical notes from any provider with mental status exams describing the claimant as having a significant psychiatric illness with cognitive abnormalities supporting functional impairment and the need for restrictions and limitations. The psychiatry notes from PMHNP Dronette consisted of the claimant's self-reported symptoms, but had identical/unremarkable mental status exams that did not support impairment. The medical notes from FNP Fontenot consisted of the claimant's self-reported symptoms, but had identical/unremarkable mental status exams that did not support impairment.*

*The psychiatry notes from APRN Boudreaux consisted of the claimant's self-reported symptoms and self-report scale scores, but had identical/largely unremarkable mental status exams that did not support impairment.*

*Other than describing the claimant as having a dysthymic mood with congruent/appropriate affect; the rest of the exams were unremarkable, including appearance, behavior, speech, thought process/content, and cognition; Additionally, the notes said the claimant was employed at an adult day care facility.*

*The 8/14/24 APS from APRN Boudreaux contained an unremarkable mental status exam, and said the claimant was advised to return to work.*

*There were no mental status findings of significant self-care, psychomotor, mood dysregulation, thinking/communication, cognitive abnormalities (with cognitive exams), and suicidal ideation or psychotic symptoms.*

On October 11, 2024, a letter was sent to you which included a copy of the medical review by Dr. Lipschutz.  The purpose of this letter and enclosure(s) was to provide you with an opportunity to review and comment on new/ additional evidence that has been received before a decision was rendered on your appeal. We asked that you provide your response by November 1, 2024.  To date, there has been no response provided.

Your statements and all the medicine evidence in your file have been considered.  However, it has been determined that impairment is not supported and does not translate into restrictions and limitations from August 19, 2023 through the Elimination Period and beyond.

Our role in reviewing your file is to determine whether your medical condition and the medical documentation contained in your file supports that you are unable to perform the material and substantial duties of your own occupation from your last day worked through the Elimination Period. We are not required to ensure the availability of this occupation or that you return to active employment with your former employer in the same or different position.

It is important to clarify that the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for long term disability benefits. The focus of our assessment is not whether or not a condition exists; but rather whether or not impairment exists that would preclude you from performing the duties of your Own Occupation. This appeal reviews and analysis considered all the medical and claim documentation contained in your Long-Term Disability administrative record,

whether or not specifically referenced in this document.

Based on our review of your file  the appeal review concludes that the medical documentation does not support impairment associated your conditions resulting in restrictions and limitations which would preclude you from performing the duties of your own occupation on a full-time basis.

**Conclusion**

We conducted a thorough and independent review of this entire claim.   In summary, we acknowledge that you may have continued to experience some impairments and symptoms associated with your conditions.  However, the available information contains insufficient evidence supporting restrictions and limitations from a physical or a psychological condition or other medical documentation supporting your symptoms remained of such severity, frequency and required a higher level of care, resulting in restrictions or limitations rendering you unable to perform the duties of your occupation from your last day worked throughout and beyond the Policy's elimination period.

Having carefully considered all of the information submitted in support of this claim, our position remains that proof of continued disability in accordance with the Policy provisions has not been provided.  Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

*"Disability" or "Disabled" means:*

*Applicable to Class 2, 3, 4:*
> *b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit,  "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

*"Own Occupation", with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.*

*"Material and Substantial Duties", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

*Elimination Period:*

*Applicable to Class 2, 3, 4:*
*90 days.*

**"Elimination Period",** *with respect to Long Term Disability, means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.*

*If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Lincoln will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.*

**"Proof"** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

*1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*
*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Lincoln.*

The Policy contains the following limitation:

**Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms Limitation**

*The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.*

*If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the period of 24 months, the Monthly Benefit will be paid during the confinement.*

*If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a period of 36 months.*

*In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.*

**"Mental Illness"** *means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Lincoln will use the replacement chosen or published by the American Psychiatric Association.*

**"*Proof*"** *means written proof covering the occurrence, the character and the extent of the loss for which the claim is made.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by The Lincoln National Life Insurance Company, and to submit any additional information you wished to be considered as part of the appeal. The Lincoln National Life Insurance Company has conducted a full and fair review of your appeal and accompanying materials and has concluded that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted; no further review will be conducted by The Lincoln National Life Insurance Company and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

*Legal Proceedings*
*A claimant or the claimant's authorized representative cannot start any legal action:*
*1. until 60 days after Proof of claim has been given; or*
*2. more than three years after the time Proof of claim is required.*

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law. Your employer's plan has a contractual limitations period of 3 years, which means that a lawsuit must be brought within 3 years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is February 15, 2027.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any The Lincoln National Life Insurance Company rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by The Lincoln National Life Insurance Company are based on the provisions outlined in Acadia Healthcare Company, Inc., Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ago naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́įł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney G.
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 334-0401