RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

APR 2 7 2026

DANIEL J. McCOY, CLERK
BY:

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**URNESS J. GRAY,**
Plaintiff, Pro Se

v.

**ACADIA HEALTHCARE COMPANY, INC.,**
**VERMILION BEHAVIORAL HEALTH SYSTEMS,**
**KAYLA CALLAHAN,**
**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,**
Defendants.

Case No. 6:25-cv-00202
Judge David C. Joseph
Magistrate Judge David J. Ayo

---

# AMENDED COMPLAINT

Plaintiff, appearing pro se, respectfully submits this Amended Complaint and states the

following:

---

# I. INTRODUCTION

1. This is an employment case involving medical leave, disability accommodation,

   insurance issues, and retaliation.

Urness Gray                         Case No.6:25-cv-00202

2. Plaintiff files this Amended Complaint as ordered by the Court to provide a clear and plain statement of the facts showing entitlement to relief.

# II. JURISDICTION AND VENUE

1. This Court has jurisdiction because the events involve federal employment laws.

2. Venue is proper because the events happened in the Western District of Louisiana.

# III. PARTIES

1. Plaintiff is a resident of Lafayette, Louisiana and worked as a nurse at Vermilion Behavioral Health Systems.

2. Acadia Healthcare Company, Inc. operates Vermilion Behavioral Health Systems.

3. Vermilion Behavioral Health Systems is Plaintiff's former workplace.

4. Kayla Callahan was the HR Director at Vermilion.

5. The Lincoln National Life Insurance Company handled Plaintiff's disability insurance.

# IV. FACTUAL ALLEGATIONS

1. On **August 18, 2023**, Plaintiff returned a missed call from HR Director **Kayla Callahan**, who was on vacation and called from her personal phone.

2. Callahan accused Plaintiff of "threatening her workers" and said she heard Plaintiff "wanted to call corporate."

3. Plaintiff denied threatening anyone and explained she only asked for the corporate number for her son.

4. Callahan told Plaintiff she "better not call corporate" or she "would be sorry," and said Plaintiff should "be glad to be working at Vermilion" and "appreciate all the hours" she was being given.

5. This call caused Plaintiff severe anxiety, distress, and physical illness. Plaintiff called out of work for several days.

6. On **August 24, 2023**, Plaintiff filed a formal complaint about Callahan's conduct.

7. On **August 25, 2023**, Plaintiff met with Chief Nursing Officer **Nichole Hale**, who suggested Plaintiff may need to go out on FMLA due to her mental-health condition.

8. Plaintiff sought medical care and was diagnosed with high blood pressure, right-sided weakness, pain, and a mental-health crisis.

9. On **August 28, 2023**, Plaintiff received FMLA paperwork from corporate leave specialist **Sabrina Weis.**

10. Plaintiff's doctor completed the paperwork on **September 13**, with corrections submitted on **September 21**.

11. Despite being copied on all communications, Callahan emailed Plaintiff on **September 19** claiming Plaintiff was on "unapproved leave."

12. Plaintiff attempted to obtain mental-health treatment, but referral errors delayed care. Plaintiff informed Sabrina of these issues on **September 28**.

13. Payroll problems began in September. Plaintiff's pay was changed multiple times by Callahan and Hale.

14. Plaintiff reported payroll issues to staffing coordinator **Luis Broussard** on **September 27**.

15. On **October 3**, Hale called Plaintiff from her personal phone and said that if Plaintiff did not turn in paperwork, "they" would fire her.

16. Plaintiff submitted all paperwork on **October 4**, and FMLA was approved through **November 10**.

17. On **October 30**, Sabrina emailed saying Plaintiff's leave would end on **November 11**, even though Plaintiff's next specialist appointment was not until **December 5**.

18. On **November 15**, Sabrina started the ADA accommodation process.

19. Plaintiff's doctor's office made administrative errors, and paperwork was misrouted.

20. On **December 1**, Plaintiff discovered she had been terminated and printed the system screen showing "Terminated."

21. On **December 4**, Plaintiff received an email confirming termination, followed by a letter on **December 5**.

22. Also on **December 4**, Callahan cancelled Plaintiff's health insurance retroactive to **December 1**, even though Plaintiff had prepaid premiums.

23. Plaintiff missed her December 5 specialist appointment and could not fill prescriptions.

24. On **December 6**, Sabrina emailed saying Plaintiff's ADA accommodation was approved through **December 31**, even though Plaintiff had already been terminated.

25. Plaintiff rescheduled all December appointments. Gynecology moved to **January 2024**, and psychiatry to **February 26, 2024**.

26. Plaintiff contacted corporate. **Lorenzo Rivera** responded on **December 28** and received all documentation.

27. Rivera said he would investigate but never provided results.

28. Plaintiff requested a work-from-home accommodation in Admissions, where other nurses were working remotely. Plaintiff applied as instructed but was not accommodated.

29. On **January 23, 2024**, Sabrina closed the ADA case due to missing paperwork, despite Plaintiff's efforts.

**30. On February 1, 2024**, Plaintiff received an email from HR stating that her ADA accommodation had expired on **December 31, 2023**.

31. The same email stated that Vermilion had approved Plaintiff for PRN (as-needed) employment for 60 days, starting **January 1, 2024** and ending **February 29, 2024**. Plaintiff had not requested PRN status, and no one discussed this change with her before it was made.

32. The email also stated that if Plaintiff did not work for at least two consecutive months during this 60-day period, she would be terminated. This was confusing because Plaintiff was still dealing with medical issues, still trying to complete ADA paperwork.

33. This PRN approval and threat of termination were made without any conversation, meeting, or explanation, and it added more stress and confusion during a time when Plaintiff was already struggling with her health and trying to comply with the ADA process.

34. Plaintiff attended her rescheduled appointment on **February 26, 2024**, was prescribed medication, and began therapy.

35. On **March 26, 2024**, Plaintiff learned her insurance had been cancelled again and backdated to **December 31, 2023**, causing large medical bills.

36. Plaintiff received no further communication from Vermilion or Acadia.

37. On **September 3, 2024**, Plaintiff applied for a remote position with Acadia and notified Rivera. No response.

38. Plaintiff followed up on **September 12**. No response.

39. Plaintiff later learned she needed to request the full disability policy from Lincoln.

40. When Plaintiff originally signed up for disability insurance, she was not given a copy of the policy, a summary of the policy, or any explanation of how the policy worked.

41. The materials provided were only a few pages of basic information and frequently asked questions. Nothing said she needed to request the full policy or that approval was not automatic.

42. Based on the information provided, Plaintiff believed she would automatically be covered if she became unable to work.

43. Plaintiff did not learn she needed the full policy until after her claim was denied. By then, her insurance had been cancelled twice, preventing her from getting the medical documentation Lincoln required.

44. Plaintiff was denied disability benefits because she did not have the policy information or the medical documentation she needed, even though she was never told how to obtain either one.

45. As a result of the ongoing stress and untreated symptoms, Plaintiff experienced another severe mental-health crisis in **October 2024**.

46. Plaintiff was unable to work from **October through December 2024**.

47. In **January 2025**, Plaintiff's employer contacted her to ask if she was ready to return, and she returned to work after stabilizing.

# V. CLAIMS FOR RELIEF

**Medical Leave Interference:** Defendants interfered with my ability to take medical leave by threatening me, changing my pay, giving me wrong information, and terminating me while I was still dealing with serious health issues.

**Retaliation for Using Medical Leave:** After I was threatened and reported problems, my pay was changed, my insurance was cancelled, and I was terminated.

1. **Failure to Accommodate My Medical Conditions:** I asked for reasonable accommodations, including time to complete paperwork and the ability to work from home. No accommodations were provided.

2. **Retaliation for Requesting Accommodations:** After I asked for help and filed complaints, I was ignored, denied assistance, and treated worse.

3. **Wrongful Termination:** I was terminated while still dealing with medical issues and still in the ADA process.

4. **Interference With Disability Benefits:** My insurance was cancelled twice, preventing me from getting medical documentation needed for my disability claim, and I was given the policy information too late to be of any good.

5. **Failure to Maintain Health Insurance:** My health insurance was cancelled without notice, causing me to miss appointments and pay out-of-pocket.

6. **Retaliation for Filing Complaints:** After reporting the August 18 call I was retaliated against and ultimately lost my job.

# VI. DAMAGES

1. I seek lost wages, lost benefits, medical expenses, emotional distress damages, and any other relief the Court finds appropriate.

# VII. PRAYER FOR RELIEF

Plaintiff respectfully requests judgment in her favor and all relief allowed by law.

# SIGNATURE

**Respectfully submitted,**

Urness J. Gray

125 Rue Viansa

Lafayette, LA 70501

Plaintiff, Pro Se

Urness Gray                                    Case No.6:25-cv-00202