RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

MAY 2 9 2026

DANIEL U. McCOY, CLERK
BY:_____

**United States District Court**

**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

URNESS J. GRAY                         CIVIL ACTION NO. 6:25-cv-00202

VERSUS                                 JUDGE DAVID C. JOSEPH

ACADIA HEALTHCARE, ET AL               MAGISTRATE JUDGE DAVID J. AYO

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO LINCOLN NATIONAL LIFE

INSURANCE COMPANY'S MOTION TO DISMISS (DOC. 33)

**MAY IT PLEASE THE COURT:**

Plaintiff Urness J. Gray respectfully submits this Memorandum in Opposition to Lincoln

National Life Insurance Company's Motion to Dismiss (Doc. 33). Lincoln's motion should be

denied because it relies on factual assertions outside the pleadings, contradicts the documents

actually provided to Plaintiff during her employment, and ignores the procedural defects in its

own handling of Plaintiff's disability claim. Plaintiff has stated a valid claim under ERISA, and

the issues raised by Lincoln cannot be resolved at the Rule 12(b)(6) stage.

1

## I. FACTUAL BACKGROUND

### A. Plaintiff Was Never Provided the Disability Policy or SPD Prior to Filing Her Claim

Plaintiff worked for Vermilion Behavioral Health Systems for approximately nine years. On August 29, 2023, Vermilion sent Plaintiff an email containing only brochures for FMLA, short-term disability, long-term disability, a Frequently Asked Questions sheet, and a Schedule of Benefits.
*See Exhibit A.*

These materials did **not** include:

- the governing policy,

- the Summary Plan Description (SPD),

- the claims procedures,

- the elimination period,

- the 13-week duration Lincoln now asserts,

- or any document explaining how to transition from STD to LTD.

These brochures were the **only** disability materials Plaintiff received before filing her claim.

### B. Plaintiff Filed Her Claim on November 30, 2023 Without Ever Receiving the Policy

Plaintiff became disabled on August 18, 2023 and filed her short-term disability claim on November 30, 2023. At that time, she had **never** been provided the policy or SPD.

2

Lincoln did not provide the policy until **January 8, 2024**, and only because Plaintiff specifically requested it.

*See Exhibit B.*

This was the **first time** Plaintiff ever received any version of the policy, despite paying premiums for nine years.

## C. Lincoln's Own Representative Referenced a 26-Week Duration

On February 1, 2024, Lincoln representative Christine emailed Plaintiff referencing a **26-week** duration. Plaintiff responded on February 7, 2024 explaining that she had lost her insurance coverage due to termination and was unable to obtain the medical documentation Lincoln demanded.

*See Exhibit C.*

This correspondence contradicts Lincoln's current assertion that the maximum duration was **13 weeks**.

## D. Lincoln Approved Plaintiff's Claim, Paid 11 Weeks, and Underpaid Her

Lincoln approved Plaintiff's short-term disability claim and paid benefits from **September 2, 2023 through November 17, 2023**, after applying the 14-day elimination period. This is **11 weeks** of benefits, which matches the **11-week Schedule of Benefits** Plaintiff received—not the 13-week duration Lincoln now asserts.

*See Exhibit D.*

3

Lincoln calculated Plaintiff's benefit at **$600/week**, for a total of $6,600, then applied an offset of $4,138.64, leaving Plaintiff with **$2,461.36**.

## II. WAGE AND BENEFIT CALCULATION

Plaintiff's earnings history further demonstrates that Lincoln's benefit calculation was incorrect and materially understated. Plaintiff's 2023 pay summary (January through November) reflects **2,263.25 hours worked** and **$65,330.44 in earnings**, despite significant payroll errors in September and October that reduced her totals. Even with these errors, Plaintiff's average weekly earnings were approximately **$1,360.22 per week**.

Under the plan's standard 60% short-term disability formula, Plaintiff's weekly benefit should have been approximately **$816.13 per week**. Instead, Lincoln calculated her benefit at only **$600 per week**, resulting in an underpayment of approximately **$216.13 per week**. Over the 11-week period Lincoln acknowledges paying (September 2, 2023 through November 17, 2023), this constitutes an underpayment of approximately **$2,377.43**.
*See Exhibit D.*

Lincoln's calculation failed to include Plaintiff's **regular overtime**, which was a consistent and expected component of her compensation. Plaintiff's overtime was not sporadic or occasional; it was part of her normal work schedule and was relied upon for her cost of living and mortgage qualification. Lincoln's failure to include this compensation violates ERISA's requirement that benefits be calculated according to the plan's terms and the participant's actual pre-disability earnings.

4

Furthermore, Lincoln's payment duration contradicts its own filings. Lincoln now asserts a **13-week** maximum benefit period, yet it paid Plaintiff for **11 weeks**, which aligns with the **11-week Schedule of Benefits** Plaintiff received, not the policy Lincoln relies on in its Motion to Dismiss. Other documents provided to Plaintiff—including the Frequently Asked Questions sheet and Lincoln's own February 1, 2024 correspondence—refer to a **26-week** duration. *See Exhibits A and C.*

These inconsistencies, combined with the underpayment and the use of incorrect earnings, demonstrate that Lincoln's denial was procedurally defective and cannot be resolved on a motion to dismiss.

## III. ARGUMENT

### A. Plaintiff Has Stated a Valid Claim Under ERISA

Lincoln's motion improperly relies on factual assertions outside the pleadings, including a policy Plaintiff did not receive until after filing her claim. At the Rule 12(b)(6) stage, the Court must accept Plaintiff's allegations as true and may not resolve factual disputes.

Plaintiff alleges:

- she was never provided the policy or SPD,
- she was denied based on rules she never received,
- Lincoln underpaid her,
- Lincoln used the wrong earnings,

5

- Lincoln used the wrong duration,

- Lincoln contradicted its own documents,

- and Lincoln failed to follow ERISA's procedural requirements.

These allegations state a valid claim under ERISA §§ 502(a)(1)(B) and 502(a)(3).

### B. Lincoln's Motion Relies on a Policy Plaintiff Never Received

Lincoln's motion is based entirely on a policy Plaintiff did not receive until January 8, 2024— after she filed her claim. This alone precludes dismissal.

### C. The Contradictory Duration Documents Create a Factual Dispute

Plaintiff received documents referencing **11 weeks**, **13 weeks**, and **26 weeks**. Lincoln's own representative referenced **26 weeks**. These contradictions cannot be resolved on a motion to dismiss.

### D. Lincoln's Underpayment and Miscalculation Are Factual Issues

Whether Lincoln used the correct earnings, correct duration, and correct policy are factual questions inappropriate for resolution at this stage.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court **deny** Lincoln National Life Insurance Company's Motion to Dismiss.